**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

ROBERT JONES,

    Plaintiff,

  v.

WARDEN DOUG WILLIAMS; and ERIC
SMOKES,

    Defendants.

CIVIL ACTION NO.: 6:17-cv-161

## <u>ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Plaintiff, currently incarcerated at Hays State Prison in Trion, Georgia, filed this 42 U.S.C. § 1983 cause of action, as amended, contesting events allegedly occurring during his incarceration at Smith State Prison in Glennville, Georgia.   Docs. 1, 5.   Defendants have moved to dismiss Plaintiff's claims against them based on Plaintiff's failure to exhaust administrative remedies and against Defendant Williams for failure to state a claim.   Doc. 25.   For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, doc. 25, **DISMISS without prejudice** Plaintiff's cause of action based on his failure to exhaust his administrative remedies, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff leave to appeal *in forma pauperis*.   To the extent Plaintiff's Notice of Retaliation Incident, doc. 30, is intended as a motion to amend his Complaint, I **DENY** that motion.

## BACKGROUND

Plaintiff initially filed this case in the United States District Court for the Northern District of Georgia, where he also submitted an Amended Complaint.   Docs. 1, 5.   Plaintiff

asserts that, on July 15, 2016, while incarcerated at Smith State Prison, Counselor Picard came to his cell, and Plaintiff informed the counselor that he was having mental health problems and was contemplating self-harm.   Doc. 5 at 3.   On July 18, 2016, Plaintiff was taken to a different cell and placed on suicide watch but did not receive any mental health treatment.   Id. at 5.   On July 21, 2016, the unit manager, Defendant Smokes, came to Plaintiff's cell and asked him if he was all right and if he wanted to "come off strip cell."   Id.   Plaintiff responded that he did not want to return to general population, as he had not seen a doctor yet.   Id.   Defendant Smokes then asked him again if he wanted to return to his previous cell.   Id.   Plaintiff "waited a few minutes and said yes because [Defendant Smokes] was not trying to understand what [Plaintiff] was going through."   Id.   Defendant Smokes returned Plaintiff to his original cell.   Id.   One day later, Plaintiff attempted to hang himself.   Id.   Plaintiff was then transported to Emory Hospital for treatment.   Id.

Plaintiff further claims that while at Emory Hospital, Warden Doug Williams and his son came to the hospital and inquired about his condition.   Id. at 4.   Plaintiff told Defendant Williams that he was "doing okay."   Id.   Defendant Williams then allegedly recorded Plaintiff saying that he was okay on a camera phone.   Id.   Following his discharge, Plaintiff was sent to Georgia State Prison for two weeks where he briefly spoke to an investigator regarding his attempted suicide before being sent to Hays State Prison on August 8, 2016.   Id.   Upon arrival, Plaintiff claims that he filled out a grievance form concerning his lack of mental health treatment prior to his suicide and gave it to Counselor Jorges, who questioned Plaintiff regarding why he still wanted to submit a grievance.   Id.   Plaintiff then told Counselor Jorges that he was "tired of being treated [unfairly]" and gave Counselor Jorges his grievance but was never given a receipt for it.   Id.   Approximately a month and a half later, Plaintiff learned that his grievance had not

been turned in, and he submitted another grievance complaining of Counselor Jorges losing his initial grievance.   Id.   That second grievance was fully appealed and denied on the grounds that it was untimely.   Id.; Doc. 25-6 at 2.   As relief, Plaintiff requests monetary damages or a reduction in his sentence.   Doc. 5 at 5.

After filing his Complaint, Plaintiff was granted leave to proceed *in forma pauperis*, doc. 7, and the Honorable Harold L. Murphy dismissed Plaintiff's claims against Counselor Jorges for failure to state a claim and transferred Plaintiff's claims against Defendants Smokes and Williams to this Court.   Doc. 12.   Following the transfer of this case, Plaintiff made an additional filing alleging that there was video footage of him being removed from the cell where he was on suicide watch without first receiving mental health treatment.   Doc. 16 at 5.   The Magistrate Judge then recommended the Court dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities but allowed Plaintiff to proceed on deliberate indifference claims against Defendants in their individual capacities.   Doc. 19.   The Court adopted that recommendation.   Doc. 23.

After the United States Marshals served Defendants, Defendants filed a Motion to Dismiss, arguing that Plaintiff fails to state a claim against Defendant Williams and that Plaintiff failed to exhaust his administrative remedies.   Doc. 25.   Plaintiff filed a Response, doc. 26, Defendants filed a Reply, doc. 27, and Plaintiff filed a Surreply, doc. 28.   Plaintiff also filed a document describing a "retaliation incident" where Hays State Prison officials allegedly searched his cell and "destroyed [Plaintiff's] tablet and most of [his] legal work like it was contraband."   Doc. 30.

**DISCUSSION**

Defendants argue that Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies and because Plaintiff fails to state a claim against Defendant Williams.   For the following reasons, I find that Plaintiff did not effectively exhaust his administrative remedies before filing this suit and **RECOMMEND** the Court grant Defendants' Motion to Dismiss.   Doc. 25.   Because I find that Plaintiff did not exhaust his administrative remedies, I do not address Defendants' argument that Plaintiff fails to state a claim against Defendant Williams.   Also, to the extent Plaintiff's notice of a retaliatory incident, doc. 30, is intended as a motion to amend his Complaint, I **DENY** that motion.

I.      **Exhaustion**

      A.      **Legal Standard**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.   42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).   The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."   Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).   Exhaustion is a mandatory requirement, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.   Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a

court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.   First, the court is to take the plaintiff's version of the facts regarding exhaustion as true.   Id. at 1082.   If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed.   Id.   However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true.   Id.   The court may instead "make specific findings in order to resolve the disputed factual issues related to exhaustion."   Id.   Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint.   Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.   Accordingly, "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."   Turner, 541 F.3d at 1082.

**B.     Georgia Department of Corrections' Grievance Procedures**

The Georgia Department of Corrections' general grievance policies are set out in Standard Operating Procedure ("SOP") IIB05-0001.   Whatley I, 802 F.3d at 1208; Doc. 25-3. SOP IIB05-0001 contains the procedures that inmates must follow to effectively exhaust their administrative remedies.   See Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process

outlined in SOP IIB05-0001.").   Under SOP IIB05-0001, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" which "affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable issue."   Doc. 25-3 at 7.

Under SOP IIB05-0001, inmates must file grievances within 10 days of becoming aware of the facts from which the grievance arises.   Id. at 10.   The grievance is screened by a Grievance Coordinator, who determines whether to accept the grievance for processing.   Id. The Grievance Coordinator may also excuse an inmate who files an untimely grievance.   Id.   If the grievance is accepted for processing, the warden has 40 days to review the grievance and determine whether to grant or deny it.   Id. at 12.   The inmate can then file a Central Office Appeal if the Grievance Coordinator rejects the grievance, the inmate receives a decision from the Warden, or the time allowed for the Warden's decision has elapsed.   Id. at 14.   The Commissioner then has 100 days to deliver a decision on the Central Office Appeal.   Id. at 15. Grievance procedures also provide that, if an inmate files a grievance related to events at a different facility, the Grievance Coordinator at the current facility will retain a copy of the grievance and forward a copy to the Coordinator at the facility named in the grievance.   Id. at 17.

### C.   Plaintiff's Efforts at Exhaustion

The Court looks first, as it must, to Plaintiff's account regarding exhaustion.   Turner, 541 F.3d at 1082.   Plaintiff contends that he submitted a grievance concerning his attempted suicide to Counselor Gray Jorges on August 8, 2016 when he arrived at Hays State Prison, but Jorges refused to give Plaintiff a receipt.   Doc. 5 at 4; Doc. 26 at 4.   Plaintiff became aware approximately a month and a half later that Counselor Jorges had not submitted that grievance.

Doc. 5 at 4.   Plaintiff then submitted a second grievance regarding Counselor Jorges's failure to submit the first grievance.   Id.   The Warden denied that grievance, and Plaintiff appealed.   Id. Defendants submit several documents, some of which contradict Plaintiff and some of which merely add detail to his account.   At this stage, the Court addresses only those documents which expound on Plaintiff's account but do not contradict it.   These documents show that Plaintiff's second grievance (but the first actually filed) was signed on March 25, 2017 and requested only that Counselor Jorges be sanctioned as a penalty for failing to turn in Plaintiff's first grievance (which was never filed).   Doc. 25-6 at 4.   The Warden at Hays State Prison denied this second grievance, stating to Plaintiff, "You have not provided proof of your allegations."   Id. at 6. Plaintiff then filed a Central Office Appeal, id. at 5, which the Office of Professional Standards rejected without addressing the merits on the grounds that Plaintiff did not file his grievance form within "10 calendar days from the date [he] knew or should have known, of the facts giving rise to the grievance."   Id. at 2.

Taking Plaintiff's account as true, he did not effectively exhaust his administrative remedies.   Plaintiff's initial grievance, even if lost or not filed, was not enough to exhaust his administrative remedies.   A temporary deprivation of access to grievance procedures does not waive a prisoner's duty to exhaust should those procedures later become available.   Bryant v. Rich, 530 F.3d 1368, 1373 (11th Cir. 2008) (affirming a district court's finding that a plaintiff whose initial grievances were not accepted was required to exhaust grievance procedures upon his transfer to a prison where his grievances were accepted).   Proper exhaustion required Plaintiff to request consideration of an untimely grievance presenting the same issue raised in his initial grievance.   Rodriguez v. Chatman, Case No. 5:15-cv-2, 2016 WL 11248528 at *9 (M.D. Ga. July 29, 2016) (recommending dismissal of a prisoner's claim where the prisoner was

initially precluded from filing a grievance regarding lack of recreation but later had full access to grievance procedures and did not file an out-of-time grievance related to that issue).   Plaintiff argues "there's nothing [that states] what an offender [is supposed] to do if the counselor at a facility never turns in a[n] offender's grievance."   Doc. 26 at 4.   Plaintiff is correct that Georgia Department of Corrections' procedures do not address this issue.   However, Plaintiff was able to file subsequent grievances and did in fact do so.[1]   In these circumstances, Plaintiff was obligated to file a grievance regarding his attempted suicide in order to properly exhaust his administrative remedies.

Plaintiff did file a second grievance, but this grievance also fails to satisfy the exhaustion requirement.   Defendants argue that Plaintiff failed to effectively exhaust through the filing of this second grievance for two reasons.   First, Defendants assert that Plaintiff's second grievance does not actually pertain to his attempted suicide but rather was directed at Counselor Jorges losing Plaintiff's initial grievance.   Doc. 25-1 at 9.   Second, Defendants claim that, because Plaintiff's second grievance was dismissed as untimely rather than on the merits, Plaintiff failed to exhaust his administrative remedies.   Because the Court finds that the rejection of Plaintiff's Central Office Appeal as untimely means that Plaintiff did not effectively exhaust his remedies, the Court addresses only this argument.

The Central Office Appeal Response to Plaintiff's second grievance states the following:

A member of my staff has reviewed your grievance.   The grievance revealed that you failed to follow the proper procedure for filing the formal grievance.   Policy states that the Grievance Form must be filed no later than 10 calendar days from the date you knew or should have known, of the facts giving rise to the grievance.

---

[1]        The record shows that Plaintiff was able to successfully file a grievance at Hays State Prison as early as November 30, 2016 when he submitted a grievance concerning access to courts unrelated to the claims in this case.   Doc. 25-4 at 2.

> Due to your failure to follow policy guidelines, the Office of Professional
> Standards will not address this grievance.

Doc. 25-6 at 2.

Because Plaintiff's appeal was not addressed on the merits, so long as the "administrative body denie[d] [the] grievance for valid procedural reasons, the court is required to find the grievance unexhausted under the PLRA." Whatley I, 802 F.3d at 1216 (Vinson, J., concurring specially) (concurring in judgment where the majority held that a prisoner exhausts administrative remedies where prison officials waive a procedural defect and decide a grievance on the merits).   Additionally, it appears the administrative determination of Plaintiff's grievance as untimely was correct.   Plaintiff signed his second grievance on May 25, 2017, more than nine months after submitting his first grievance on August 9, 2016.   Doc. 25-6 at 4.   Though Plaintiff could not have known immediately that Counselor Jorges had not filed his grievance, he should have expected either a response from the Warden or a need to file a Central Office Appeal within 40 days of submitting his grievance to Counselor Jorges.   Doc. 25-3 at 12. Indeed, Plaintiff states in his Amended Complaint that he learned the first grievance had not been filed approximately a "month and a half" after he submitted the grievance.   Doc. 5 at 4. Plaintiff, therefore, should have filed his second grievance by late September 2016 or early October 2016 or sought leave to file an out-of-time grievance if filing thereafter.   However, Plaintiff did not file his second grievance until May 2017, and he did not explain why he delayed in filing or request that the Grievance Coordinator waive the time limit for good cause.   Because of this delay, the Department of Corrections validly denied Plaintiff's second grievance as untimely.   Even taking Plaintiff's account as true, he did not properly exhaust his administrative remedies and is precluded from litigating this issue in federal court at this time.   I, therefore, **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion to Dismiss and

**DISMISS without prejudice** Plaintiff's Complaint, as amended, for failure to exhaust administrative remedies.

II.     **Notice of Retaliation Incident (Doc. 30)**

Having determined that Plaintiff's Complaint, as amended, is due to be dismissed, the Court briefly addresses a "Notice" filed by Plaintiff.   Doc. 30.   In that Notice, Plaintiff states that on October 3, 2018, four unidentified officers at Hays State Prison searched his cell and destroyed his tablet and legal materials.   Id.   Plaintiff alleges that he filed a grievance relating to this incident and appealed that grievance to the highest level, but the grievance was denied. Id.   This filing was not docketed as a motion, and it is not clear what relief, if any, Plaintiff requests from the Court regarding this incident.   However, to the extent that Plaintiff's filing was intended as a motion to amend his Complaint to add claims against these officers, the Court **DENIES** that motion.

Because Plaintiff has already amended once as a matter of right, doc. 5, he must request leave of Court to amend his Complaint again.   Fed. R. Civ. P. 15(a)(2).   Additionally, Federal Rule of Civil Procedure 20 permits defendants to be joined in one action if a plaintiff asserts a right against the defendants jointly or if the basis of the plaintiff's claims against all defendants arise from the same transaction or occurrence.   Fed. R. Civ. P. 20(a)(2).   Here, the allegations against the Hays State Prison officers contained in Plaintiff's filing have no direct relationship with Plaintiff's claims against Smith State Prison officials Defendants Jones and Williams. Accordingly, the Court declines to add a retaliation claim against Hays State Prison officers to this action.   Plaintiff may pursue relief for this alleged retaliation in federal court, but he must do so by exhausting his administrative remedies as to the alleged retaliation and then filing a separate action in this Court.

III.    **Leave to Appeal** *in Forma Pauperis*

Should the Court adopt my proposed recommendation, the Court should also deny

Plaintiff leave to appeal *in forma pauperis*.   Though Plaintiff has not yet filed a notice of appeal,

it would be appropriate to address these issues in the Court's order of dismissal.   Fed. R. App. P.

24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice

of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is

not taken in good faith.   28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).   Good faith in this

context must be judged by an objective standard.   Busch v. County of Volusia, 189 F.R.D. 687,

691 (M.D. Fla. 1999).   A party does not proceed in good faith when he seeks to advance a

frivolous claim or argument.   See Coppedge v. United States, 369 U.S. 438, 445 (1962).   A

claim or argument is frivolous when it appears the factual allegations are clearly baseless or the

legal theories are indisputably meritless.   Neitzke v. Williams, 490 U.S. 319, 327 (1989);

Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).   An *in forma pauperis* action is frivolous

and not brought in good faith if it is "without arguable merit either in law or fact."   Napier v.

Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085,

403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to

raise on appeal, and an appeal would not be taken in good faith.   Thus, the Court should **DENY**

Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants'

Motion to Dismiss, doc. 25, **DISMISS without prejudice** Plaintiff's cause of action based on

his failure to exhaust his administrative remedies, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff leave to appeal *in forma pauperis*.   To the extent Plaintiff's Notice of Retaliation Incident, doc. 30, is intended as a motion to amend his Complaint, I **DENY** that motion.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.   Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.   Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).   A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 15th day of August, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA